Bosworth, Ch. J.
That the judgment is just, on the facts found, I regard as free from serious doubt. I think the evidence warrants the findings. The only finding of fact, in respect to which there can be any doubt of the sufficiency of the evidence to justify it, is the fifth.
That finding states, that the defendants well knew that the plaintiff used the word “Cocoaire” as their trademark, and to indicate that the compound on which it was impressed, was their manufacture, and that the defendants fraudulently used the word “ Coedine” to induce the public to believe that the compound of their preparation, was in fact that of the plaintiffs, and that in this regard their attempt to deceive the public and defraud the plaintiffs has been successful.
*204 Edward Phalon, one of the defendants, testified that he had been in the business of hair dressing 24 or 25 years; that he commenced manufacturing perfumery in June, 1852, and selling at wholesale and retail every kind of perfumery; that he has sold “a preparation of coeoanut oil,” as “a preparation of hair oil” at different times since 1840. He called it “a preparation of coeoanut oil” and sold it to customers, but not by wholesale, until 1858,' when he commenced selling it under the name “ Cocoike,” and with labels on the bottles, having that word impressed thereon.
Ho one can readily believe, that an enterprising manufacturer of, and dealer in perfumery, and who had been selling at wholesale and at retail since June, 1852, every kind of perfumery, had failed to observe the advertisements of “ Burnett''s COCOAIHE” which were extensively published in the summer of 1857, in the City of Hew York, the defendant’s place of business, in the Herald, Tribune, Times, Evening Post, Express, Sun, Harper’s and Leslie’s Weekly, as well as in other papers, or that he was ignorant of the existence in the market, of an article thus advertised, and sold in New York, by A. D. & C. Sands, Lazell, Marsh & Hand, Hegeman & Co., Barnes & Park, E. C. Hell & Co., Carey, Howard & Sanger, I or T. Maxwell, Schieffelin Brothers, and many others, and the sales of which had increased from 500 dozen bottles in the six months commencing July 1, 1857, to 1,500 dozen in the second six months, and in the next six months to 300 dozen more.
Even if he had denied on oath that he had heard of the article; or, if having heard of it, that he was aware that this article of the plaintiffs’ manufacture was, or had become known to the public, by the word “Cocoaene,” it would require some credulity to credit it. But he makes no such denial, and there is no evidence opposed to deducing such inferences as would be naturally drawn from the testimony to which I have referred.
But this is not all. The defendants, according to their *205 own testimony, had been selling, since 1840, substantially the same article as they, in 1858, denominated Cocoine; and had been selling it as “A preparation of cocoanut oil." Why, after transacting this item of their business, in this manner, for some eighteen years, do they resort to the means employed in 1858 to bring it before the public under the designation of “ Cocoine'’? The answer is found in the reputation, and extensive and largely increasing sales of Cocoaine.
And there cannot reasonably be assigned any other motive than the one stated in the fifth finding of facts.
The fact that Leopold Simon, (the defendants’ chemist, who entered into their employment about the first of March, 1858, and who, prior to that time, had followed the business of a chemist in Paris,) had never heard of the word Cocoaine until after he “composed” the name Cocoine, does not, in my view, tend to show the absence of a fraudulent intent in the defendants.
The defendants had been “frequently experimenting “with cocoanut oil, and selling” it since 1840, and selling it as a preparation of hair oil. , It was a simple matter to get up a label, and impress on it, and on the bottles containing their compound, the word “ Cocoaine,” omitting one letter only. But no plausible or rational explanation, except an intent to defraud, could be given of a transaction as bold as that would be. It was, undoubtedly, deemed wiser to instruct the chemist to compose a name, somewhat indicative of the substantial ingredient of the compound, without informing him of the fact that Burnett was manufacturing and selling largely a similar article, which was known as “Oocoaine.”
The reputation of the defendants may, justly, be assumed to be extended, creditable and valuable. They had used it, and had experienced all the benefit that eighteen years’ employment of it, in connection with their preparation and sale of cocoanut hair oil, could give to their compound.
Burnett, by great outlay and effort, had succeeded in creating an extensive demand for his own manufacture, *206 known as “ Cocoaine.” The defendants, in 1858, with the intent and for the purpose stated in the fifth finding of facts, impressed on the bottles and labels containing and covering their compound the close imitation, “ Coeo'ine."
It seems to me, therefore, that the judgment cannot be reversed on the ground that this finding is contrary to evidence.
That the plaintiffs are entitled to the relief of an injunction against such a use of their trade-mark, on the facts found, I do not understand to be disputed. The cases cited, on the points of either counsel, establish that they are. (See Upton’s Trade-Marks, 180-185.)
That the plaintiffs recovered only nominal damages, considering the circumstances under which they were so assessed, I regard as of but little moment.
I think the judgment should be affirmed.
Moecriee, Justice, concurred in this opinion.