HOSMER (UNITED STATES v.). See Case No. 15,394.

HOSSACK (UNITED STATES v.). See Case No. 15,395.

───────

## Case No. 6,714.

HOSTETTER et al. v. VOWINKLE et al.

[1 Dill. 329:[1] Cox Manual Trade-Mark Cas. 207.]

Circuit Court, D. Nebraska. 1871.

TRADE MARKS—ILLEGAL IMITATIONS—DAMAGES.

1. Equity will protect, by injunction, the rights of one who has adopted and appropriated a trade mark to distinguish his goods; and if his rights are invaded, the originator or proprietor of the trade mark may also recover his damages (ordinarily the loss of profits) from the wrong-doer.

[Cited in Liggett & Myers Tobacco Co. v. Hynes, 20 Fed. 884.]

[Cited in Liggett & Myers Tobacco Co. v. Sam Reid Tobacco Co., 104 Mo. 61, 15 S. W. 853.]

2. The imitation of the trade mark of another to be unlawful need not be in all particulars exact and complete; it is sufficient if it be of a nature to mislead and deceive: accordingly, an

[2] And see Getty v. Campbell, 2 Rob. (N. Y.) 664.

[1] [Reported by Hon. John F. Dillon, Circuit Judge, and here reprinted by permission.]

imitation of a manufacturer's label in every respect like the original, except that "Hostetter" was altered to "Holsteter," and the words "Hostetter & Smith," were changed to "Holsteter & Smyte," was held to be illegal, and ground for an injunction and for damages.

[Cited in Glen Cove Manuf'g Co. v. Ludeling, 22 Fed. 826.]

3. There being proof that the plaintiff had an established trade in the city where the imitated bitters were made and sold by the defendants, and that their sales fell off, in that place, in an amount at least equal to sales made by the defendants of the imitated article, the court gave the plaintiffs as damages the profits they would have made on the number of bottles which the defendants actually sold of their own manufacture, being satisfied that the plaintiff's sales had been reduced to that extent by this cause.

[Cited in Hall v. Stern, 20 Fed. 789; El Modelo Cigar Manuf'g Co. v. Gato (Fla.) 7 South. 28; Liggett & Myers Tobacco Co. v. Sam Reid Tobacco Co. (Mo. Sup.) 15 S. W. 844.]

[Cited in Godillot v. Harris, 81 N. Y. 267.]

[See Apollanaris Brunnen v. Somborn, Case No. 496.]

Bill in equity for an injunction and relief. The plaintiffs, David Hostetter and George W. Smith, are the proprietors and manufacturers of "Hostetter's Celebrated Stomach Bitters," at Pittsburg, Pennsylvania, and the defendants, three in number, are residents of Omaha, in Nebraska. The bill charges an infringement of the plaintiffs' trade mark, invented and adopted to distinguish these bitters, and asks for an injunction and for damages. The bill avers that the defendants, in Omaha, adopted and used for a time, bottles, labels, devices, and boxes in exact imitation of the plaintiffs', and after that made a slight alteration in the labels, but leaving them substantial copies of the plaintiffs', and calculated to deceive the public. The district judge allowed a temporary injunction. The answers, though not denying all the statements of the bill, do so sufficiently to put the plaintiffs upon proof of the case made. The case was submitted upon the pleadings, exhibits, and proofs. No defence was made on the ground that the article in question was not such as the law would protect.

Kennedy & Townsend, for complainants.
John I. Redick, for defendants.

Before DILLON, Circuit Judge, and DUNDY, District Judge.

DILLON, Circuit Judge. The proofs show that as far back as 1853, Dr. Jacob Hostetter and the complainants (one of whom is his son), commenced the manufacture in Pittsburg, of what is known as "Hostetter's Stomach Bitters," and that the business of making and vending these bitters has been carried on by them and by the complainants, as their successors ever since. These bitters are made after a recipe of Dr. Jacob Hostetter. The annual sales have increased from thirty thousand dollars at first, until

they reached, in 1869, the sum of over one million dollars. These bitters are extensively advertised by the plaintiffs in nine different languages in the newspapers of this country and by circulars, labels, and otherwise. It is testified that the plaintiffs employ in publishing almanacs etc., to advertise this article twelve steam presses and several hand presses at an annual expenditure of over three thousand dollars. In 1858, Doctor Jacob Hostetter retired from the business, leaving it to be conducted by the present plaintiffs, David Hostetter and George W. Smith, and assigning for a valuable consideration his interest in the firm and in the right to use the recipe to his said son. Since then the plaintiffs have continued the manufacture and sale of the article in question. The proofs show beyond dispute, that for years the plaintiffs have used a certain trade mark, consisting of the designation on the bottles and on the labels of "Hostetter's Celebrated Stomach Bitters," in connection with directions on the label for the use thereof, and a device representing the conflict of St. George and the dragon, and the likeness of Dr. Hostetter, and a fac simile signature of the firm of Hostetter & Smith.

It is established by the testimony that from August 10th, 1869, until October 1st, of the same year, the defendants adopted and used, in the sale of bitters of their own manufacture, the plaintiffs' trade marks, labels, and devices in every respect. After that and down to the filing of the bill in the cause, the defendants slightly altered the trade mark in certain particulars. "Hostetter" was altered to "Holsteter," and the fac simile signature of the plaintiffs was changed from "Hostetter & Smith" to "Holsteter & Smyte," and the place of manufacture was stated as Pittsburg instead of New York. But the size of the labels and the devices, the appearance, the directions for the use, the size and shape of the bottles, mode of packing, etc., were in exact imitation of the plaintiffs, and the boxes or cases intended for sale were marked "Dr. Hostetter's Bitters," the same as the genuine.

The fact of infringement is too obvious to be disputed and is not seriously controverted by the respondents' counsel. But he claims in the first place that the plaintiffs have no title to the trade mark because they have not shown a regular assignment from Dr. Jacob Hostetter to them. And the precise point is that this assignment was in writing and that a copy thereof is annexed to the deposition of the witness and no reason is given for not producing the original.

Without stopping to inquire whether such an objection could be made available for the first time by way of argument after the cause is submitted, it is a sufficient answer to say that since the evidence is clear and undisputed that the present plaintiffs have been in the exclusive use of this trade mark since 1858, they are not obliged to show, as against wrong-doers, that they have a written assignment from one of their former partners.

The law is well settled that a party who has appropriated a particular trade mark to distinguish his goods from other similar goods, has a right or property in it which entitles him to its exclusive use. This right is of such a nature that equity will protect it, by injunction, from invasion, and if it has been invaded the wrong-doer is liable for the damage he has thereby caused the party whose trade mark he has adopted or illegally imitated; which damage will ordinarily be the loss of profits caused by the illegal or fraudulent infringement. Candee v. Deere [54 Ill. 439]; Motley & Downman, 3 Mylne & C. 1; Millington v. Fox, Id. 338; Eden, Inj. c. 14, p. 314; Story. Eq. Jur. § 951; Taylor v. Carpenter [Case No. 13,785]; Walton v. Crowley [Id. 17,133]; Coffeen v. Brunton [Id. 2,946]; Seixo v. Provezende, 1 Ch. App. 194; Amoskeag Manuf'g Co. v. Spear, 2 Sandf. 606; Filley v. Fassett [44 Mo. 168], and cases cited; Gillott v. Esterbrook, 47 Barb. 469; Burnett v. Phalon, 9 Bosw. 192; Croft v. Day, 7 Beav. 89; Edleson v. Vick, 23 Eng. Law & Eq. 53. These cases and others, also, show that it is not necessary to constitute an illegal infringement that the trade mark of the originator should be copied in every particular; it is sufficient to warrant equitable relief that it is likely to deceive or mislead the patrons of the originator or make it pass with the public as his.

Applying these principles to the present case, the defendants are liable to the plaintiffs not only in respect of the bitters which they sold prior to October 1st, using the plaintiffs' trade mark in full, but for those which they sold after making the alterations above mentioned, such as changing the name "Hostetter" to "Holsteter," etc.

From the evidence of one of the defendants, I find that he admits sales at least to the extent of two hundred dozen bottles. The evidence shows that the sales of the plaintiffs, in Omaha, fell off during the time the defendants were manufacturing and selling their imitation bitters to even a greater amount than this.

I am satisfied that the plaintiffs' sales have been lessened at least to the extent of the two hundred dozen bottles, and that their profits would have been on each case of one dozen bottles, the sum of four dollars; which would make in all the sum of eight hundred dollars. A decree will be entered for this amount, and also making perpetual the injunction heretofore allowed. Decree accordingly.

[For other cases involving this trade mark, see Hostetter v. Adams, 10 Fed. 838; Same v. Fries, 17 Fed. 620; Hostetter Co. v. Brueggeman-Reinert Distilling Co., 46 Fed. 188.]